**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| KEVIN COGBURN | * | |
| ADC #181168, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | No. 4:23-cv-00664-JJV |
| | * | |
| ARKANSAS DEPARTMENT OF | * | |
| CORRECTIONS, *et. al,* | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER**

## I.      INTRODUCTION

Kevin Cogburn ("Plaintiff") is a prisoner in the Arkansas Division of Correction ("ADC").

He has filed a *pro se* Amended Complaint, pursuant to 42 U.S.C. § 1983, alleging that from May

2 to 9, 2023, Defendants Captain Linda Arnold and Lieutenant Jarius Sanders violated his Eighth

Amendment rights by confining him in an isolation cell without a toilet, drinking water, bedding,

clothing, or the opportunity to shower.   (Doc. 5.)   All other claims and Defendants have been

previously dismissed without prejudice.   (Doc. 15.)   And the parties have consented to proceed

before me.   (Doc. 16.)

Defendants have filed a Motion for Summary Judgment arguing the claim against them

should be dismissed without prejudice because Plaintiff failed to properly exhaust his available

administrative remedies.   (Docs. 17-19.)   Plaintiff has not filed a Response, and the time to do

so has expired.   Thus, the facts in Defendants' Statement of Facts (Doc. 19) are deemed admitted.

*See* Local Rule 56.1(c); *Jackson v. Ark. Dept. of Educ., Vocational & Tech. Educ. Div.*, 272 F.3d

1020, 1027 (8th Cir. 2001).   And, as will be discussed herein, those facts are supported by the

record.   After careful consideration and for the following reasons, the Motion for Summary

1

Judgment is GRANTED, and Plaintiff's conditions of confinement claim against Defendants Arnold and Sanders is DISMISSED without prejudice.

## II.     SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.   *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).   The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact.   *Celotex,* 477 U.S. at 323.   Thereafter, the nonmoving party cannot rest on mere denials or allegations in the pleadings, but instead, must come forward with evidence supporting each element of their claim and demonstrating there is a genuine dispute of material fact for trial.   *See* Fed R. Civ. P. 56(c); *Celotex*, 477 U.S at 322; *Holden v. Hirner,* 663 F.3d 336, 340 (8th Cir. 2011).   In this regard, a material fact dispute is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party."   *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC,* 76 F.4th 753, 757 (8th Cir. 2023).

## III.     DISCUSSION

### A.     The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a).   The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily

2

resolved, and improving litigation that does occur by leading to the preparation of a useful record."
*Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89–91 (2006).

The PLRA requires inmates to properly exhaust their administrative remedies as to each claim in the complaint and complete the exhaustion process prior to filing an action in federal court. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Importantly, the Supreme Court has emphasized "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218. Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility. *Id.*

**B.    ADC's Grievance Policy**

The ADC policy in effect at the time of the alleged constitutional violation was Administrative Directive 19-34, which establishes a three-step procedure. (Docs. 17-1, 17-2.) First, the inmate must attempt informal resolution by submitting a Unit Level Grievance Form to a designated problem solver within fifteen days of the incident. The form must include "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." (Doc. 17-2 at § IV(E)(2).) Inmates are cautioned a "[g]rievance must specifically name each individual involved in order that a proper investigation and response may be completed" and an inmate who "fails to name all parties during the grievance process may have his or her lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties." (*Id*. § IV(C)(4).) And the grievance form itself reminds prisoners to include the "name of personnel involved." (*Id.* at 20*.*) The problem solver must respond to the informal resolution within three working days. (*Id*. § IV(E)(4) and (7).)

3

Second, if informal resolution is unsuccessful or the problem solver does not timely respond, the inmate must file a formal grievance within three working days by completing a section on the informal resolution form. (*Id*. § IV(E)(11) and (F)(1).) At this point, the form receives a grievance tracking number. (*Id*. at § IV(F)(3).) Medical grievances are sent to the Health Services Administrator ("HSA"), while all other grievances are sent to the Warden. The HSA or Warden must provide a written response within twenty working days. (*Id*. § IV(F)(5) and (7).)

Third, an inmate who is dissatisfied with the grievance response, or who does not timely receive a response, must appeal within five working days to the appropriate ADC Deputy Director. The policy requires a written response within thirty work days unless there is an extension. (*Id*. § IV(F)(9) and (G)(6).) And the response ends the grievance process. (*Id*.) Finally, the Directive includes the following warning:

> Inmates are hereby advised that they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit or Claims Commission claim. If this is not done, the lawsuit or claim may be summarily dismissed.

(*Id*. at § IV(N).)

### C.    Plaintiff's Grievances

The ADC Inmate Grievance Supervisor says in her sworn Declaration that from May 2, 2023 (which is when the alleged constitutional violation began) until July 19, 2023 (which is the day Plaintiff commenced this action), Plaintiff did not file any grievances alleging Defendants Arnold or Sanders subjected him to unconstitutional conditions of confinement as alleged in his Amended Complaint. (Doc. 17-1 at 6-7.) And Plaintiff has not offered any contrary evidence. *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) ("When the movant makes a *prima facie* showing of entitlement to summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as

4

to a material fact"); *Frevert v. Ford Motor Co.*, 614 F.3d 466, 473-74 (8th Cir. 2010) (to avoid summary judgment, "the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor").

The law is well settled. To satisfy the PLRA, a prisoner must fully exhaust his administrative remedies in accordance with the incarcerating facility's rules before filing a lawsuit in federal court. *See Jones, 549* U.S. at 218 (prisoner must comply with institution's exhaustion rules); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014) (improper exhaustion when the "ADC was not asked to evaluate the conduct" of the defendant "or the distinct § 1983 claims first asserted" in the lawsuit); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (dismissal is mandatory if "exhaustion was not completed at the time of filing"). Based on the undisputed evidence, it is clear Plaintiff has not done so.

### D.   Unavailability

This is not the end of the analysis because the PLRA only requires prisoners to exhaust their "available" administrative remedies. 42 U.S.C. § 1997e(a). Administrative remedies are unavailable if, for instance: (1) the grievance procedure "operates as a dead end;" (2) the procedure is "so opaque that it becomes . . . incapable of use;" or (2) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 642 (2016); *Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018).

Plaintiff has not offered any evidence or explanation as to why administrative remedies were unavailable to properly exhaust his conditions of confinement claim against Defendants Arnold and Sanders before he filed this lawsuit. (Docs. 2, 5.) Therefore, I conclude Defendants are entitled to summary judgment. *See Jones*, 549 U.S. at 211 ("There is no question that

exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"); *King v. Iowa Dept. of Corr.*, 598 F.3d 1051, 1052 (8th Cir. 2010) (under the PLRA, § 1983 actions concerning prison conditions "shall not be brought" by an inmate "until such administrative remedies are available are exhausted").

That being said, I realize Plaintiff may perceive my exhaustion findings as an unfairly technical "gotcha" mechanism to keep him out of court.   To the contrary, the exhaustion requirement plays a critical role in the remedy process.   The Eighth Circuit has explained this important role as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson*, 340 F.3d at 626-27; *see also Woodford*, 548 U.S. at 88 ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures").

## IV.   CONCLUSION

IT IS, THEREFORE, ORDERED that:

1.    Defendants' Motion for Summary Judgment (Doc. 17) is GRANTED, and Plaintiff's conditions of confinement claim against Defendants Arnold and Sanders is DISMISSED without prejudice.

2.    The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Memorandum Order would not be taken in good faith.

Dated this 1st December 2023.

JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE